UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| CONAGRA GROCERY PRODUCTS COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Regional Administrator of the United States Environmental Protection Agency ("EPA") for Region 1, files this complaint and alleges as follows:

NATURE OF THE ACTION

1. This is a civil action brought pursuant to Sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9607 and 9613(g)(2) ("CERCLA"). In this action, the United States seeks to recover costs incurred and to be incurred by the United States in response to releases or threatened releases of hazardous substances at or from the A.C. Lawrence Leather Company Sludge Lagoons Superfund Site ("Site") located in South Paris, Oxford County, Maine.

JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over the parties under 28 U.S.C. §§ 1331 and 1345 and Sections 107(a) and 113(b) of CERCLA, 42

U.S.C. §§ 9607 and 9613(b).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district, and because the Site is located in this district.

## DEFENDANT

4. Defendant ConAgra Grocery Products Company, LLC, ("ConAgra Grocery") is a limited liability company organized and existing under the laws of the State of Delaware. Its principal place of business is in Illinois, and it is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY BACKGROUND

5. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response" actions, 42 U.S.C. §§ 9604(a), 9601(25).

6. Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), as amended:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or a substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment . . . .

7. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
>
> (1) the owner and operator of a vessel or a facility, [and]
>
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
> \* \* \*
>
> shall be liable for –
>
> (A) all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan; . . . .

## GENERAL ALLEGATIONS

### Site Description and Background

8. The Site is an area of former settling lagoons used to collect tannery waste, and is located in South Paris, Oxford County, Maine.

9. The Site is bounded to the east by Oxford Street, to the north by the Little Androscoggin River, to the west by a railroad right of way, and to the south by a residential development.

10. In 1953, Swift & Company purchased certain parcels of land in South Paris, Maine, including a parcel on which it built a leather tannery, and another parcel located across the Little Androscoggin River that contained settling lagoons used to collect tannery waste. The settling lagoon area currently comprises the Site.

11. In or around November 1955, the A.C. Lawrence Leather Company division of Swift & Company opened and began operating the leather tannery in South Paris, Maine ("South

3

Paris tannery").

12. From at least November 1955 through 1975, waste from the South Paris tannery was sent across the Little Androscoggin River to the settling lagoons at the Site through a wood flume on a suspension bridge, and later through a metal trough.

13. In 1973, following an agreement and plan of merger and reorganization, Swift & Company conveyed the real property that comprised the South Paris tannery and the settling lagoons to Estech, Inc.

14. In the 1970s, the South Paris Publicly Owned Treatment Works was constructed and began accepting waste from the South Paris tannery.  By around 1975, waste from the South Paris tannery was no longer sent to the settling lagoons.

15. From at least 1955 until approximately 1975, industrial waste containing hazardous substances such as chromium, lead and volatile organic compounds was discharged from the South Paris tannery to unlined settling lagoons on the southeast bank of the Little Androscoggin River.

Relationship of Defendant to the Site

16. Defendant is the successor to Estech, Inc.

17. The A.C. Lawrence Leather Company incorporated in 1897.

18. Swift and Company incorporated in Illinois in 1885.  In 1945, it changed its name to Swift & Company.

19. In December 1952, the A.C. Lawrence Leather Company merged into Swift & Company and began operating as a division of Swift & Company.

20. On or about January 10, 1969, another company called Swift & Company

incorporated in Delaware.  The Illinois Swift & Company allowed Delaware Swift & Company to use its name.

21. In March 1969, the Illinois Swift & Company merged into the Delaware Swift & Company.  The surviving company was called Swift & Company.  Thereafter, the A.C. Lawrence Leather Company operated as a division of this newly merged Swift & Company.

22. On or about December 12, 1972, Estech, Inc., incorporated as a subsidiary of Swift & Company.

23. On or about December 12, 1972, Esmark, Inc., incorporated as a holding company.

24. In or around January 1973, Esmark, Inc., Swift & Company, Estech, Inc., and certain other companies entered into an agreement and plan of merger and reorganization.

25. In April 1973, Esmark's acquisition of Estech, Inc., Swift & Company, and other companies was complete.  Swift & Company and Estech, Inc., both became a subsidiary of Esmark.

26. As part of the reorganization, the A.C. Lawrence Leather Company division of Swift & Company was transferred to and became a division of Estech, Inc.  Also in 1973, Estech, Inc., took ownership of the real property on which the South Paris tannery and the settling lagoons were located.

27. Under the agreement and plan of merger and reorganization referenced above, the liabilities associated with the A.C. Lawrence Leather Company division were transferred from Swift & Company to Estech, Inc.

28. On or about March 5, 1976, Estech, Inc., sold certain real property and assets of its A.C. Lawrence Leather Company division, including the South Paris tannery, to a group of

employees, who formed a new company called the A.C. Lawrence Leather Company, Inc.  Only certain, specified obligations of the division were transferred to the purchaser.

29.	On or about June 25, 1981, Estech, Inc., changed its name to Estech Investments, Inc.

30.	On or about August 7, 1984, Beatrice Companies, Inc., acquired Esmark, Inc., including Esmark's subsidiary, Estech Investments, Inc.

31.	On or about April 17, 1986, the investment banking firm Kohlberg Kravis Roberts & Co. acquired Beatrice Companies, Inc. through a leveraged buyout merger transaction.

32.	On or about June 2, 1986, the stock of Estech Investments, Inc., was transferred through liquidating distributions "upstream" through various Beatrice related entities, with Beatrice Companies, Inc., ultimately holding the stock of Estech Investments, Inc., as of June 16, 1986.

33.	On or about February 27, 1987, Beatrice Companies, Inc., transferred the stock of Estech Investments, Inc., to BCI Divestiture, Inc.

34.	At some time between May and July 1991, Estech Investments, Inc., merged into BCI Divestiture, Inc.

35.	On or about February 24, 1992, BCI Divestiture merged into Beatrice U.S. Food Corp.

36.	On or about September 24, 1993, Beatrice U.S. Food Corp. merged into Beatrice Company.

37.	On or about September 24, 1993, Beatrice Company merged into Hunt-Wesson, Inc.

38.   On or about July 19, 1999, Hunt-Wesson, Inc., changed its name to ConAgra Grocery Products Company, Inc.

39.   On or before November 22, 2005, ConAgra Grocery Products Company, Inc., was converted to a limited liability company with the name ConAgra Grocery Products Company, LLC.

40.   ConAgra Grocery Products Company, LLC, is the successor in interest to Estech, Inc., including its A.C. Lawrence Leather Company division.

Site Cleanup and Enforcement Activities

41.   In 2000, the Town of South Paris and/or the Maine Department of Environmental Protection ("ME DEP") received a complaint about "green ooze" on the bank of the Little Androscoggin River and possibly discharging into the River.

42.   Thereafter, ME DEP and EPA conducted several investigations at the Site. These investigations revealed widespread chromium contamination, as well as the presence of other hazardous substances at the Site.

43.    EPA began a removal action at the Site in 2006 to address the contamination present at the Site. It removed approximately 34,000 tons of contaminated soil and sent it off-site for disposal.

44.   In undertaking response actions to address the release or threat of release of hazardous substances at the Site, the United States has incurred response costs of at least $5,670,547.83. None of these response costs have been recovered by the United States. The United States may continue to incur response costs in connection with the Site.

## SPECIFIC ALLEGATIONS

45.     The Site is a location where hazardous substances have been deposited, stored, disposed of, placed or otherwise have come to be located, and therefore is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

46.     Chromium, lead and volatile organic compounds are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

47.     There have been "releases" or "threatened releases" of "hazardous substances," within the meaning of Sections 101(14), 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(22) and 9607(a), into the environment at and from the Site.

48.     Defendant in this action is a "person," within the meaning of Sections 101(21) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(21) and 9607(a).

49.     Swift & Company was the "owner" and "operator" of the Site at the time of disposal of hazardous substances, under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

50.     Estech, Inc. was the "owner" and "operator" of the Site at the time of disposal of hazardous substances, under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

51.     The Defendant is the successor in interest to an owner and/or operator of the Site at the time of disposal hazardous substances.  Therefore, Defendant is liable for all response costs incurred and to be incurred that are not inconsistent with the National Oil and Hazardous Substances Pollution Contingency Plan ("NCP"), under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and 40 C.F.R. Part 300, as an "owner" or "operator" of the Site at the time of disposal of hazardous substances, under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

52.     As a result of the releases or threatened releases of hazardous substances at or from

the Site, the United States has incurred and may continue to incur response costs, within the meaning of Sections 101(25) and 107 of CERCLA, 42 U.S.C. §§ 9601(25) and 9607, to respond to the releases or threatened releases of hazardous substances at or from the Site.

53. The response costs incurred by EPA in connection with the Site were incurred in a manner not inconsistent with the NCP.

54. The United States has not been reimbursed for any of the response costs it has incurred to date.

## CLAIM FOR RELIEF
(Recovery of Response Costs)

55. Paragraphs 1- 54, above, are realleged and incorporated herein by reference.

56. Defendant ConAgra Grocery is a person, or successor-in-interest to a person, who at the time of disposal of a hazardous substance owned a facility from which there was a release or threatened release of the hazardous substance, which has caused and continues to cause the United States to incur response costs.

57. Pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), Defendant is jointly and severally liable to the United States for all costs incurred and to be incurred by the United States in connection with Site, including enforcement costs and interest on all such costs.

58. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendant is jointly and severally liable to the United States, under Section 107(a) of CERCLA, 42 U.S.C. §9607(a), for future response costs to be incurred by the United States in connection with the Site.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Enter judgment in favor of the United States, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding Defendant jointly and severally liable for unrecovered response costs, including enforcement costs, incurred by the United States with respect to the Site, plus interest thereon;

B. Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), that Defendant is jointly and severally liable for all future response costs, including but not limited to enforcement costs, incurred by the United States in connection with the Site, plus interest thereon;

C. Award the United States its response costs in bringing this action, including the costs of attorney time;

D. Grant such other and further relief as the Court deems appropriate.

          Respectfully submitted,

          IGNACIA S. MORENO
          Assistant Attorney General
          Environment and Natural Resources Division
          United States Department of Justice


Dated: 11/29/2011      */s/ Laura J. Rowley*
          Laura J. Rowley
          Trial Attorney
          Environmental Enforcement Section
          Environmental and Natural Resources Division
          U.S. Department of Justice
          P.O. Box 7611, Ben Franklin Station
          Washington, DC 20044-7611
          (202) 616-8763
          laura.rowley@usdoj.gov


          THOMAS E. DELAHANTY II
          United States Attorney
          District of Maine

          John G. Osborn
          Assistant United States Attorney
          U.S. Attorney's Office, District of Maine
          100 Middle Street Plaza
          East Tower, Sixth Floor
          Portland, Maine  04101
          (207) 780-3257
          John.Osborn2@usdoj.gov

OF COUNSEL:

Sarah Meeks
John Krallman
Office of Regional Counsel
U.S. Environmental Protection Agency, Region I
5 Post Office Square, Suite 100
Boston, MA 02109